IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00976-SKC -MDB

KRISTEN GEARHART,

    Plaintiff,

v.

UNIVERSITY OF COLORADO COLORADO SPRINGS, THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate, MARK TOMFORDE, ZACHARY MESYAN, GENE ABRAMS, JOHN/JANE DOES 1-4, and CHANCELLOR JENNIFER SOBANET, in her official capacity,

    Defendants.

## UNIVERSITY DEFENDANTS' MOTION TO DISMISS ECF #7, PLAINTIFF'S AMENDED COMPLAINT PER F.R.C.P. 12(B)(6)

Defendants the Board of Regents of the University of Colorado, UCCS, Chancellor Jennifer Sobanet, and Mark Tomforde, Zachary Mesyan, and Gene Abrams in their official capacities[1] (the "University Defendants") move to dismiss Plaintiff's Amended Complaint (ECF #7) for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[2]

## BACKGROUND

---

[1] This motion does not address any individual-capacity claims.

[2] **Conferral**: Undersigned counsel reached out to confer with counsel for Plaintiff regarding this motion. *See* SKC Civ. Practice Standard 7.1B(b). Plaintiff's counsel did not respond; the University Defendants assume that Plaintiff opposes.

Plaintiff was a student at UCCS. ECF #7, ¶¶ 101-103. In fall 2020, Plaintiff enrolled in the Accelerated Masters Program, which allowed her to complete her undergraduate degree in mathematics while simultaneously beginning graduate courses. *Id.*, ¶ 103. She became a mathematics graduate student in 2021. *Id.* Plaintiff was also employed as a graduate instructor. *Id.*, ¶ 215.

Defendant Zachary Mesyan is a tenured UCCS Professor and was Chair of the Mathematics Department (the "Department") in 2020-2021. *Id.*, ¶ 5. Defendant Gene Abrams is also a tenured Professor in the Department. *Id.*, ¶ 6. Defendant Mark Tomforde was hired as an Associate Professor in the Department in Fall 2020. *Id.*, ¶ 84. Tomforde was Plaintiff's academic advisor. *Id.*, ¶ 166.

Plaintiff alleges that Tomforde subjected her to ongoing sexual harassment throughout their advising relationship and that UCCS should have known he would do so based on past allegations against Tomforde while he was employed at the University of Houston. *See generally id.*, ¶¶ 28-54, 101-213. In December 2021, Plaintiff told Sean Dean, another UCCS employee, about "Tomforde's actions." *Id.*, ¶ 171. Plaintiff then recanted her claim. *Id.* ¶ 175. Nonetheless, Dean reported to UCCS's Office of Institutional Equity (OIE) that Plaintiff "had reported troubling sexual misconduct." *Id.*, ¶ 178. Plaintiff also "made a preliminary report" of unspecified information to OIE. *Id.*, ¶ 177. OIE followed up with Plaintiff asking for more information. *Id.*, ¶ 180. Plaintiff admits that she did not see OIE's inquiry,

2

and so did not respond to OIE or pursue the process, because it was during the "break between semesters." *Id.* Accordingly, OIE closed the matter. *Id.*, ¶ 181.

Later, Plaintiff "requested assistance obtaining an order of 'no contact'" against Tomforde. *Id.*, ¶ 222. At that time, OIE opened an investigation into Plaintiff's claim and implemented "protective measures" which included prohibiting Tomforde from engaging in any UCCS activities. *Id.*, ¶¶ 223-24.

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

### I. Plaintiff's § 1983 and Title IX claims are time-barred.

"[I]t is appropriate to resolve a statute of limitations defense on a Rule 12(b)(6) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Wei v. Univ. of Wyoming Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 740 (10th Cir. 2019). To be sure, Plaintiff's Amended

3

Complaint is often vague and devoid of timeframes. Nonetheless, there is sufficient detail to make clear that both her § 1983 and Title IX claims are time-barred.

In Colorado, the statute of limitations for both § 1983 and Title IX actions is two years from the time the cause of action accrued. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014); *Kinoff v. Colo. Sch. of Mines Bd. of Trustees*, No. 21-CV-02657-RMR-KLM, 2023 WL 11898803, at *3 (D. Colo. Feb. 9, 2023), *report & rec. adopted*, No. 1:21-CV-02657-RMR-KLM, 2023 WL 11898798 (D. Colo. Mar. 16, 2023) ("In Colorado, the limitation on a personal injury claim brought pursuant to Title IX and § 1983 is two years."); *see also* C.R.S. § 13-80-102(1)(g),(i).

And the claims accrued when Plaintiff knew or should have known that her rights had been violated. *Nicholas v. Boyd*, 317 F. App'x 773, 778 (10th Cir. 2009) (addressing § 1983 accrual); *Varnell*, 756 F.3d at 121 (addressing Title IX accrual). A plaintiff "need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Alexander v. Okla.*, 382 F.3d 1206, 1216 (10th Cir. 2004). Rather, it's when "the plaintiff can file suit and obtain relief." *Varnell*, 756 F.3d at 121. The test is an objective one, with the focus "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Nicholas*, 317 F. App'x at 778.

While unclear (itself a basis to dismiss, *see infra* § II.b.), Plaintiff's § 1983 claim appears to proceed on a theory that the University violated her 14th Amendment right to equal protection or substantive due process by failing to

4

prevent Tomforde's conduct. ECF #7, ¶¶ 265-69, 280, 283. Her Title IX claim is premised on the University's alleged actual knowledge of, and deliberate indifference to, Tomforde's conduct. *Id.*, ¶¶ 294-95. All arise from the common injury of Plaintiff's alleged sexual harassment and assertion that the University did not properly respond to it.

Plaintiff filed her Complaint on April 10, 2024. ECF #1. Therefore, her claims are untimely unless they accrued on or after April 10, 2022. But "Tomforde's abuse drove Plaintiff close to the breaking point by December 2021." ECF #7, ¶ 170. Between the start of her advising relationship with Tomforde in Fall 2020 through December 2021, Plaintiff alleges many instances in which Tomforde exerted emotional control over her; pushed her into a sexual relationship; physically touched her without consent; and threatened her. *See, e.g., id.*, ¶¶ 20, 106, 110-16, 119-21, 129-48. Also in December 2021, Plaintiff reported Tomforde to Sean Dean, *id.*, ¶¶ 171, 175; made "a preliminary report" to OIE, *id.*, ¶ 177; and OIE responded with an "inquiry" while Plaintiff "was on break between semesters" before closing the case, *id.* ¶ 180-81. Moreover, Plaintiff alleges that also in December 2021, she requested a meeting with OIE, but none was scheduled. *Id.*, ¶ 180. Thus, by December 2021, Plaintiff had experienced Tomforde's conduct. She believed it was sexual harassment, had reported it, and thought OIE follow-up was inadequate. She knew she had asked for a meeting, and knew she hadn't had one. Nothing more is needed for her to have brought these claims. *See Kinoff*, 2023 WL 11898803, at *4

5

(dismissing § 1983 equal protection, § 1983 substantive due process, and Title IX claims as time-barred when plaintiff's complaint "allege[d] numerous situations in which she lived in fear of encountering Student on campus" and "that no one from Mines had reached out to her to discuss her Title IX investigation or report" before the statute of limitations had run, meaning that she "knew or should have known of a claim against Mines and its employees . . . but chose to do nothing").

Accordingly, the statute of limitations began running in December 2021 and expired in December 2023, four months before the complaint. Plaintiff's § 1983 and Title IX claims are untimely and should be dismissed.

## II. Assuming Plaintiff's claims are not time-barred, she has not stated a claim under 42 U.S.C. § 1983 (Counts II and V).
### a. Plaintiff's official-capacity claims are duplicative.

"An action against a person in [their] official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Thus, each official-capacity suit is simply a suit against the University; there is no need for more than one. Chancellor Sobanet is the appropriate University employee to implement any injunctive relief, and the Court should dismiss the redundant claims against Mesyan, Abrams, and Tomforde. *See Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1087 (D. Colo. 2010).[3]

---

[3] The official-capacity claims against Defendants John/Jane Does 1-4, ECF #7, ¶ 8, must also be dismissed. The individual-capacity claims must be dismissed because Plaintiff has failed to allege any personal involvement. *See Santistevan v. Stegink*,

### b. Plaintiff fails to identify any violated federal right.

Plaintiff "cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002) (citation omitted)). Yet that's precisely what she's done here. In Count II, Plaintiff brings a claim labeled "42 U.S.C. § 1983" against Mesyan, Abrams, and Tomforde in their official capacities. ECF #7, ¶¶ 262-290. In Count V, Plaintiff brings a claim labeled "42 U.S.C. § 1983 Prospective Injunctive Relief" against Chancellor Jennifer Sobanet in her official capacity. *Id.*, ¶¶ 317-319. Nothing in either heading provides notice of what right of Plaintiff's is at issue. The supporting paragraphs don't help. Rather, Plaintiff's Amended Complaint reads like a negligent-hire theory: she refers to the University's "duty of care," ECF #7, ¶¶ 263-64; "substantial risk," *id.*, ¶ 271, and proximate causation, *id.*, ¶ 289. Plaintiff's § 1983 claim therefore fails at the first step: "identify[ing] the constitutional right allegedly infringed." *Leonard v. Sieler*, 33 F.3d 62 (10th Cir. 1994).

### c. Plaintiff hasn't pleaded an Equal Protection violation.

Plaintiff may be trying to assert an equal protection claim. ECF #7, ¶¶ 234, 280. She hasn't.

To be sure, "sexual harassment by a state actor can constitute a violation of the equal protection clause." *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238,

---

No. 15-CV-00198-RM-KMT, 2016 WL 1388018, at *1 (D. Colo. Apr. 8, 2016) (dismissed claims against Doe defendants "because plaintiff failed to allege that they were personally involved in the alleged constitutional deprivations").

1249 (10th Cir. 1999). But in order to establish that the University is liable for such sexual harassment, "[P]laintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the . . . institution, or are taken by an official with final policy making authority." *Id.* "In the absence of an official policy, [an institution] may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124–25 (10th Cir. 2008). Plaintiff has not pleaded facts to support either theory.

First, Plaintiff has pointed to no University "policy statement, ordinance, regulation, or decision officially adopted and promulgated" leading to the conduct she experienced. *Murrell,* 186 F.3d at 1249. Instead, she admits the University's policies prohibit this conduct and that an entire office, OIE, is responsible for "addressing sex and gender-based harassment." *See, e.g.*, ECF #7, ¶¶ 19, 22-24, 187, 223-34. Moreover, she hasn't asserted that any policy applies only to her. This, too, she must do, as an "an equal protection claim requires a showing that the defendant treated the plaintiff *differently* from similarly situated individuals[.]" *Clark v. Las Cruces Pub. Sch. Dist.*, No. 10-CV-307 WJ/GBM, 2010 WL 11619298, at *6–7 (D.N.M. July 1, 2010) (dismissing equal protection claim because plaintiff "produced no facts suggesting that any such policy (to the extent it exists) applies only to [plaintiff] as opposed to the student body as a whole"). Second, Plaintiff has not alleged that the actions here were "taken by an official with final policy making

8

authority." *Murrell*, 186 F.3d at 1249. Whether the action is Tomforde's alleged conduct or Mesyan and Abrams' alleged non-intervention, she hasn't alleged that those individuals had any policy making authority.

Nor has Plaintiff alleged a custom of "widespread and persistent" sexual harassment. *Rost*, 511 F.3d at 1124–25. First, Plaintiff alleges a "custom" of disallowing females any input in Tomforde's hire, ECF #7, ¶¶ 26, 71-74, which she implies led to her harassment, *id.*, ¶ 75. This fails for at least two reasons: (1) it assumes that a female vote would have prevented Tomforde's hire and so too Plaintiff's harassment – but that's far too speculative to state a claim; and (2) it's undisputed that Tomforde's hire occurred in 2020, and any allegations based on 2020 actions are untimely. *Id.*, ¶ 26; *Supra*, § I. Next, Plaintiff alleges that UCCS does not have any female tenured professors in the Department, which "suggests a culture and environment shaped by policies, practices, and customs that fails to take account concerns inherent to females in academia, including gender discrimination, sexual harassment, and abuse[.]" ECF #7, ¶¶ 62-66. But she pleads one fact (no tenured female professors) to make two inferences: (1) the department is hostile to women, and (2) that hostility led to her harassment. *See, e.g.*, *id*. Like above, that inference upon inference falls far short of actually pleading "widespread and persistent sexual harassment." Finally, she further alleges there must be a custom of harassment because of "reports of women suddenly exiting the Department," and because Abrams was also accused of sexual harassment. *Id.*, ¶¶

9

67, 77-79. These are similarly vague and fail. Plaintiff hasn't alleged an Equal Protection violation.

### d. Plaintiff hasn't pleaded a substantive due process violation.

Finally, assuming Plaintiff is trying to assert a substantive due process claim, she also hasn't done so. ECF #7, p. 35, ¶¶ 233, 269-71, 283, 286.

True, courts have recognized that "[s]exual assault or molestation by a school teacher violates a student's substantive due process rights" to bodily integrity. *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996). But "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Rost*, 511 F.3d at 1125–26. There are two exceptions, one of which is "danger creation" and appears to be Plaintiff's theory here. ECF #7, ¶ 286. A substantive due process claim premised on a danger creation theory must meet a six-part test:

> (1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Rost*, 511 F.3d at 1125–26. In sum, "a claim brought under the 'danger creation' theory must be predicated on reckless or intentional injury-causing state action which 'shocks the conscience.'" *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir. 1996) (citations omitted).

Here, Plaintiff has not pleaded such facts. At most, Plaintiff alleges that Tomforde harassed students at the University of Houston; Abrams knew it; Mesyan should have known it; and the Department hired him anyway. ECF # 7, ¶¶ 82, 95-97. But even taken as true, none of the alleged Houston conduct would show that hiring Tomforde put Plaintiff "at substantial risk of serious, immediate, and proximate harm," because the conduct—aside from Plaintiff's conclusory allegations that it was "abuse" or "assault"—simply amount to allegations that Tomforde didn't maintain appropriate boundaries. *See, e.g.*, *id.*, ¶¶ 33 ("gossiping"); 40 ("comments concerning female students' bodies"); 41 ("flirt aggressively"). Moreover, it isn't "enough to show that the state increased the danger of harm from third persons; the § 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff." *Seamons*, 84 F.3d at 1236. So even if Plaintiff's allegations show some degree of disregard, it's just not the culpability that's required and certainly isn't "shocking to the conscience, brutal, or offensive to human dignity." *Abeyta*, 77 F.3d at 1256.

### III. Plaintiff fails to state a claim under Title IX.
#### a. Relevant framework

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of [gender], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The University "is not vicariously liable to its students for all sexual harassment caused

by teachers," but is "liable only for its own misconduct." *Escue v. N. OK Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (citation omitted). Thus, in cases seeking to hold a school responsible for, as here, professor-on-student harassment, the student must plead, and eventually prove, that (1) "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures . . . [had] actual knowledge of discrimination in the recipient's programs" and (2) the school responded with deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Plaintiff fails to plead facts supporting either prong.

### b. Plaintiff has not alleged that a person with authority to take corrective action had actual knowledge of the harassment.

Assuming Plaintiff adequately alleges that Mesyan, as Department Chair, had authority to remedy or take corrective action, she does not allege that he had "actual knowledge" of Tomforde's conduct. ECF #7, ¶¶ 5, 17.

"The actual knowledge standard is a high bar." *Swearingen v. Pleasanton Unified Sch. Dist. 344*, 641 F. Supp. 3d 1141, 1167 (D. Kan. 2022). It means the University is only liable "where it has made a conscious decision to permit sex discrimination in its programs, and precludes liability where the school district could not have remedied the harassment because it had no knowledge thereof." *Murrell*, 186 F.3d at 1246.

Plaintiff first alleges that Mesyan had actual knowledge of Tomforde's alleged acts at the University of Houston, ECF #7, ¶ 95. But Plaintiff must show he "had actual knowledge of discrimination *in the recipient's programs*"—here, that's

UCCS. *Escue*, 450 F.3d at 1153 (citation omitted). Knowledge about conduct at Houston was not conduct *in the University of Colorado's program*. Indeed, "a failure to prevent sexual harassment . . . before it occurs does not violate Title IX . . . absent a showing of an institutional policy of indifference." *Murrell*, 186 F.3d 1238, 1251 n.7. (And such policy doesn't exist. *Supra*, § II.c.)

In some cases, "harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX." *Escue*, 450 F.3d at 1153. Plaintiff hasn't shown that, either. She hasn't alleged that Mesyan knew about the Houston conduct. It was Abrams – not Mesyan – who discussed the conduct with Tomforde. ECF #7, ¶ 82. At best, she claims that Mesyan participated in Tomforde's hiring process which "would have shown" information about the Houston conduct. *Id.*, ¶¶ 93-95. But "[t]he Supreme Court has specifically rejected any [Title IX] liability based on constructive notice—that is, that the school 'should have known' about harassment but failed to uncover and eliminate it." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1175 (10th Cir. 2007). Besides, as discussed above, *supra* § II.d., the Houston conduct is "too dissimilar . . . to provide the school with actual knowledge of sexual harassment." *Escue*, 450 F.3d at 1153; *see also Gebser*, 524 U.S. at 285 (complaint that teacher made inappropriate remarks in class did not show actual knowledge of teacher's sexual harassment of student). Finally, Plaintiff alleges that "Tomforde discussed the situation concerning he and Plaintiff with Defendant[] Mesyan." ECF #7, ¶ 186. This says nothing about the

"situation" that would give rise to Mesyan's actual knowledge, and also doesn't clear the bar for holding the University responsible under Title IX.

Plaintiff also cannot succeed on a theory that Laura Emmot, the Title IX coordinator, had "actual knowledge" of any harassment. Plaintiff doesn't say what she told OIE in 2021, nor does she say what Dean told OIE. Indeed, she asserts that she recanted her allegations about Tomforde, *id.*, ¶ 175, and never pleads that she actually reported Tomforde to OIE. Thus, she doesn't plead actual knowledge in that timeframe. And OIE did respond later – so while Emmot likely had "actual knowledge" at some point, she also responded by, among other things, investigating and barring Tomforde from University activities. *Id.*, ¶¶ 223-24.

### c. Plaintiff hasn't alleged deliberate indifference.

Even assuming that Plaintiff had alleged actual knowledge of Tomforde's conduct, she hasn't pleaded that the University was deliberately indifferent to it. This requires that the University's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 453 (10th Cir. 2010) ("*Morris*"). Liability attaches only when there "is an official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. The school only needs to "respond in a manner that is not clearly unreasonable." *Rost*, 511 F.3d at 1123. It is appropriate "on a motion to dismiss" for the court to "identify a response as not clearly unreasonable as a matter of law." *Morris*, 397 F. App'x at 453. Here, the University attempted to reach out to Plaintiff in 2021 and she did not respond. ECF

14

#7, ¶¶ 177, 180-81. It's not clearly unreasonable to reach out for more information, nor to close the matter after none was provided. Later, the University instituted an investigation and prohibited Tomforde from participating in University activities. ECF #7, ¶¶ 223-24. This certainly is not "clearly unreasonable," and is not deliberate indifference. *Escue*, 450 F.3d at 1155 (university's response which included meeting with victim, transferring her out of harassing professor's class, and "permanently end[ing]" professor's teaching role after the semester was not deliberately indifferent as a matter of law).

### IV. The Court must dismiss the 42 U.S.C. § 1985 official-capacity claims against Tomforde, Mesyan, and Abrams (Count IV)

Again, official-capacity claims are against the entity itself, and because an entity cannot "conspire with itself," Plaintiff cannot bring a § 1985 conspiracy claim against these three defendants in their official capacities. *See, e.g.*, *Barger v. State of Kan.*, 620 F. Supp. 1432, 1435 (D. Kan.), *on reconsideration*, 630 F. Supp. 88 (D. Kan. 1985) ("[N]o section 1985(3) conspiracy could have existed because the University and its officials constitute a single entity that cannot conspire with itself. . . . [T]o the extent that plaintiff has alleged that defendants conspired in their official capacities, plaintiff has not stated a claim.") (citations omitted). Plaintiff's official-capacity conspiracy claims must be dismissed.

### CONCLUSION

The University respectfully requests that the Court dismiss all claims with prejudice and grant such other relief as the Court deems just.

15

**DATED:** September 23, 2024.

                                                                 Respectfully submitted:

                                                                 *s/ Megan Clark*
                                                                 Megan Clark
                                                                 Senior Assistant University Counsel
                                                                 Special Assistant Attorney General
                                                                 University of Colorado
                                                                 Office of University Counsel
                                                                 1800 Grant Street, Suite 700
                                                                 Denver, CO 80203
                                                                 303-860-5691
                                                                 megan.clark@cu.edu
                                                                 *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2024, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Paul M. Linnenburger
Lane Linnenburger Lane LLP
2266 Dayton Street, Suite A-2
Aurora, CO 80010
paul@attorneyslane.com
*Attorney for Plaintiff*

Michael McMaster
Assistant Solicitor General
Colorado Department of Law
1300 Broadway
Denver, CO 80203
Michael.McMaster@coag.gov
*Attorney for Defendant Zak Mesyan*

Amy Colony
Senior Assistant Attorney General
Tort Litigation Unit
Colorado Department of Law
1300 Broadway
Denver, CO 80203
Amy.Colony@coag.gov
*Attorney for Defendant Gene Abrams*

Courtney Kramer
James Kadolph
SGR, LLC
3900 E. Mexico Avenue, Suite 700
Denver, CO 80210
(303) 320-0509
CKramer@sgrllc.com

JKadolph@sgrllc.com
*Attorneys for Defendant Mark Tomforde*

*s/ Pamela K. Morrison*
Pamela K. Morrison, Litigation Paralegal