IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00976-SKC-MDB

KRISTEN GEARHART,

      Plaintiff,

v.

UNIVERSITY OF COLORADO, et al.
capacity,

      Defendants.

---

**DEFENDANTS GENE ABRAMS AND ZACHARY MESYAN'S JOINT MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF #7)**

---

Defendants Gene Abrams and Zachary Mesyan move to dismiss Plaintiff's

First Amended Complaint (ECF #7) for failure to state a claim under to

Fed.R.Civ.P. 12(b). In support thereof, Defendants state the following:[1]

**STATEMENT OF CONFERRAL**

The undersigned contacted Plaintiff's counsel via e-mail, on October 10, 2024.

Counsel indicated that Plaintiff intends to amend her complaint a second time to

add new information but did not address the defects identified by Abrams or

---

[1] This motion does not address any official-capacity claims. Defendants Abrams and
Mesyan join and incorporate by reference, the University Defendants' Motion to
Dismiss, at Sections II. and IV, to the extent they address the basis for either the
individual or official capacity claims stated against Abrams or Mesyan. (ECF #32, p.
6-11)

Mesyan, nor indicate when leave for such an amendment will be sought as required by Fed.R.Civ.P. 15. Defendants understand Plaintiff's response to object to the relief sought herein.

## BACKGROUND

Plaintiff, Kristen Gearhart, a former student at the University of Colorado Colorado Springs ("UCCS"), asserts claims against Defendants Gene Abrams and Zachary Mesyan: (1) for deliberate indifference, in violation of the Equal Protection and Due Process (substantive) clauses of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count II); and (2) for conspiracy, along with Defendant Mark Tomforde, to violate Gearhart's constitutional rights, pursuant to 42 U.S.C. § 1985. ECF #7, ¶¶262-290; 308-322.

Abrams is a tenured UCCS Professor in the Math Department. ECF #7, ¶ 6. Mesyan is a tenured UCCS Professor, also in the Math Department, who served as Chair in 2020-2021. *Id.,* ¶ 5. Tomforde was hired as an Associate Professor in the Department in the Fall of 2020. *Id.,* ¶ 84.

Gearhart alleges that Tomforde subjected her to ongoing sexual harassment throughout his role as her academic advisor, beginning in 2020. *See generally,* ECF #7, ¶¶ 28-53; 101-213.[2] Neither Abrams nor Mesyan were parties to the University's

---

[2] Defendants here join and incorporate by reference, the University Defendants' background statement set forth in their Motion to Dismiss. ECF #32, pp. 2-3.

Title IX proceedings that resulted from her complaint to the University's Office of Institutional Equity (OIE).

Gearhart alleges that Abrams and Mesyan were deliberately indifferent to her liberty interests (substantive due process) and right to equal protection, in two parts: (1) in the recruitment and hiring of Tomforde, despite Tomforde's alleged known history of abusive behavior towards female students at another university (ECF #7, ¶¶ 26-53; 56-61; 71, 74-75, 78-81; 83-98); and (2) by engaging in retaliation against Gearhart after she made a complaint of sexual misconduct against Tomforde. *Id.* ECF #7, ¶¶ 170-171; 177-78; 185-192; 201-217. She further brings a separate claim pursuant to Section 1985 alleging these Defendants, along with Tomforde, sought to "blacklist" her within the Math Department at some unknown point in time after the OIE initiated its investigation in December 2021. *Id.;* Count IV, pp. 44-45.[3]

Gearhart has not and cannot identify any clearly established law that required Defendants to recruit, hire or support faculty candidates with no history of misconduct at other institutions, to deny support to Tomforde during an investigation or otherwise fail to support Gearhart's version of events during the Title IX proceedings. Specifically, there is no legal authority to support liability under these alleged facts, pursuant to a danger-creation theory. She has also not

---

[3] Plaintiff's allegations with respect to Abrams and Mesyan, both prior to the start of Tomforde's employment on the faculty and after OIE initiated its investigation, are lacking in specific dates or time-frames.

stated a recognized due process interest in the right to work with certain professors or be assigned to them as an advisee. Finally, Gearhart is unable to identify any comparators in terms of similarly situated male students who received more favorable treatment or specific benefits than her. For these reasons, her claims against these Defendants do not state a claim for relief.

Gearhart may have alleged facts suggesting claims under common law tort theories. But claims grounded in alleged negligent hiring or Defendants' assessments of Gearhart's character and performance as a PhD candidate, will not rise to the level of any violation of her constitutional rights. She also fails to allege any facts demonstrating that these Defendants intentionally discriminated against her based on gender when she was removed from her academic and teaching assignments. It short, Gearhart cannot elevate what may be, at most, claims for negligent hiring or defamation, to one for a violation of a clearly established federal right.

Abrams and Mesyan are also entitled to qualified immunity for any claims for money damages, stated against them in their individual capacities.

## STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal for failure to state a claim. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citations omitted).

On a Rule 12(b)(6) motion, well-pleaded factual allegations must be accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007). A complaint, however, must provide "more than labels and conclusions" and courts need not accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. A Rule 12(b)(6) motion, therefore, requires the Court to identify and strip out allegations that are legal conclusions, bare assertions, or merely conclusory, as such allegations are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678. The Court then reviews the factual allegations to determine if they plausibly suggest entitlement to relief. *Id.* at 679.

## ARGUMENT

### I.    Gearhart's Section 1985 claim, as stated against Abrams and Mesyan, is time-barred.

Abrams and Mesyan incorporate the University Defendants' Motion to Dismiss, including its accurate analysis that Gearhart's § 1983 claim against Abrams and Mesyan is time-barred. ECF #32, pp. 3-6. The same analysis applies to Gearhart's §1985 claim, which is also time-barred.

As explained below, Gearhart's § 1985 claim fails to provide the parties with adequate notice of its factual basis, including a specific timeframe. *See infra § III.A.* Nevertheless, it appears the core of Gearhart's § 1985 claim is that Abrams and Mesyan conspired to deprive Gearhart of her right to equal protection by agreeing that they would not report Tomforde to OIE. *See* ECF #7, ¶ 189. And Gearhart's complaint is complete enough to determine that this alleged agreement took place before April 10, 2022—which is the deadline under the applicable statute of limitations. *See* ECF #32, pp. 4-5.

The section of Gearhart's complaint that addresses her conspiracy claim begins in December 2021. ECF #7, ¶ 170. And it was during this timeframe that Gearhart claims Abrams and Mesyan "actively agreed not to make any report to OIE." *Id.*, ¶ 189. Only later in her complaint does Gearhart identify alleged action that occurred "[i]n or around April 2022." *Id.*, ¶ 193. Thus, the alleged agreement occurred before the effective limitations period cutoff date of April 10, 2022. And, as explained in the University's motion to dismiss, the alleged facts indicate Gearhart was aware of relevant conduct, believed it to be sexual harassment, and thought OIE's response was inadequate, which was all that was needed for her to bring these claims. ECF #7, p. 5

Finally, as discussed below, the remaining allegations, which claim Abrams and Mesyan refused to work with Gearhart and removed her from her position, do not actually allege a conspiracy because Gearhart fails to allege an agreement

between the parties. Accordingly, these allegations cannot rescue her untimely claim.

## II. Gearhart fails to plausibly state a claim under 42 U.S.C. § 1983 for violation of a federal right.

### A. Gearhart has not identified which federal right she claims was violated.

At the outset, and to the extent Gearhart has any remaining claims not barred by the statute of limitations, Abrams and Mesyan incorporate here the University Defendants' arguments in its Motion to Dismiss that Gearhart fails to identify what constitutional right is at issue. (ECF #32, p.7,*§ II.b*).

Because Gearhart does not identify which federal right her § 1983 claim is predicated upon, Abrams and Mesyan address the possible theories that underlie her complaint. Each of these possible constitutional claims fail as a matter of law and should be dismissed under Rule 12(b)(6).

### B. Gearhart has not pleaded a substantive due process claim against Abrams or Mesyan, based on an alleged injury to her liberty interests.

To state a cognizable substantive due process claim, Gearhart must first allege sufficient facts to show a property or liberty interest warranting due process protection. *Lehman v. City of Louisville,* 967 F.2d 1474, 1476 (10th Cir.1992); *Brenna v. Southern Colo. State College,* 589 F.2d 475, 476 (10th Cir.1978).

A Section 1983 violation based on substantive due process "must be predicated on a state action manifesting one of two traditional forms of wrongful

intent, either (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm." *Uhlrig v. Harder,* 64 F.3d 567, 573 (10th Cir. 1995). It is axiomatic that "the Due Process Clause is not a guarantee against incorrect or ill-advised [government] decisions." *Uhlrig*, 64 F.3d at 573 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992). The Civil Rights Act was not "intended to create a body of general tort law." See *Paul v. Davis,* 424 U.S. 693, 700 (1976).

To the extent Gearhart has stated a claim for injury to her liberty interests in bodily integrity, *see Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19,* 77 F.3d 1253, 1255 (10th Cir. 1996), her claims must fail because Defendants' alleged failure to protect her from harm by a third party (Defendant Tomforde), cannot form the basis of a constitutional claim. *See Robbins v. Oklahoma,* 519 F.3d 1242, 1251 (10th Cir. 2008) (court refused to impose liability for failure to revoke license of private daycare provider whose criminal actions resulted in fatal injuries to plaintiffs' infant child). Normally, state actors are liable only for their own acts, and not the violent or injurious acts of third parties. *Liebson v. N.M. Corr. Dep't,* 73 F.3d 274, 276 (10th Cir.1996). Gearhart's Amended Complaint is premised on the alleged sexual harassment and abuse, much of which occurred off-campus or online, by another Defendant, Professor Tomforde.

Assuming Gearhart intends to state a claim under an exception to this rule, a state-created danger theory, which is recognized as a basis for substantive due process claims, *see Vicente-Elisas v. Mukasey,* 532 F.3d 1086, 1095 (10th Cir. 2008),

she has not alleged any reckless or intentional injury-causing action by Abrams and Mesyan that put *her specifically* at a substantial risk of serious, immediate, and proximate harm resulting from Tomforde's alleged sexual harassment and abuse.

Gearhart alleges both Defendants, particularly Abrams, unlawfully coordinated the recruitment and hiring of Tomforde, despite having knowledge of his history of misconduct concerning female students while employed by the University of Houston. ECF #7, ¶¶ 26-53; 94-97.[4] Gearhart alleges generally that the individual Defendants conspired to conceal Tomforde's known risk to female students and suggests they fast-tracked his elevation to a tenure by excluding the input of female faculty. *Id.,* ¶¶ 56-61; 71, 74-75, 78-81; 83-98. Gearhart alleges in a conclusory fashion that, after Tomforde's hiring, Tomforde remained under the "supervision" and "control" of Defendants Abrams, Mesyan, and perhaps others, throughout the time Tomforde was her advisor. *Id.,* at ¶ 169.

To survive a motion to dismiss, Gearhart's danger creation claim must satisfy a six-part test: (1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at

---

[4] Abrams and Mesyan vigorously deny that they had any prior knowledge of Tomforde's history of misconduct at University of Houston at any time relevant to Plaintiff's claims, including during the recruitment and hiring of Tomforde. Nor did they have a constitutional duty to uncover such information. However, they recognize that these allegations are taken as true for purposes of a Fed.R.Civ.P. 12(b) evaluation.

substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience. *See Rost v. ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.,* 511 F.3d 1114, 1125-26 (10th Cir. 2008).

Overall, "a claim brought under the 'danger creation' theory must be predicated on reckless or intentional injury-causing state action which 'shocks the conscience.'" *Seamons v. Snow,* 84 F.3d 1226, 1236 (10th Cir. 1996 (citations omitted). This court must look at the conduct as a whole to determine whether it "shocks the conscience." *Uhlrig,* 64 F.3d at 576 . This includes both action and inaction. *See Currier v. Doran,* 242 F.3d 905, 920 (10th Cir. 2001) (stating that a social worker's failure to investigate physical signs of abuse and third-party reports of abuse by third partiescould be conscience-shocking under a danger-creation theory). The standard is not an easy one for a plaintiff to satisfy:

> It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. This is a high level of outrageousness.

*Camuglia v. City of Alburquerque*, 448 F.2d 1214, 1222-23 (10th Cir. 2006).

In order to determine whether the alleged facts of the instant case "shock the conscience" and therefore rise to the level of a substantive due process violation, this Court must be mindful of three basic principles: (1) the need for restraint in defining the scope of substantive due process claims, *Collins,* 503 U.S. at 125; (2)

the concern that Section 1983 not replace state tort law, *DeShaney*, 489 U.S. at 202; *Medina*, 960 F.2d at 1495; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety, *Collins*, 503 U.S. at 128-29.

### 1. Gearhart does not plausibly allege a substantive due process claim based on the recruitment and hiring of Tomforde.

Here, Gearhart has not alleged facts demonstrating that either Abrams or Mesyan intended to harm *her* specifically or female students in general, by promoting Tomforde's hire and elevation to tenured status. First, Gearhart does not and cannot allege that Abrams and Mesyan alone were responsible for Tomforde's successful candidacy or that without their input, Tomforde would not have been hired by the University.[5] Gearhart's assumptions regarding Defendants' alleged control over the hiring process and the ultimate decisions made by the University rely on speculation. In any case, Gearhart cannot demonstrate that Defendants had a *constitutional* duty to her or female students in general, to promote a candidate without a prior disciplinary record at other institutions.

Finally, even if taken as true, none of allegations of Tomforde's past behavior describes assaultive behavior or forced sexual relationships between students and

---

[5] Defendants join and incorporate by reference, the University's arguments that Plaintiff's theory that Abrams and Mesyan conspired to remove all female faculty and staff input from Tomforde's hiring process (which Defendants expressly deny), also relies on speculation that having female members on the hiring commission would have led to a different result. (ECF #32, p. 9).

Tomforde. ECF #7, ¶¶ 29-48.[6] Instead, Gearhart merely reads such criminal acts into the prior complaints about Tomforde. *Id.,* ¶¶ 29-31, 34-35, 54, 83. Gearhart embellishes these alleged incidents at the University of Houston by speculating about Tomforde's motive and intent in acting as he did (*e.g.,* ¶¶ 31, 33-34) and about how the subjects of his behavior (persons presumably she doesn't even know) were impacted. These gratuitous remarks are not *facts* that can possibly be imputed to Abrams and Mesyan as part of their alleged pre-hiring knowledge of Tomforde's past. The court should disregard them in assessing whether Gearhart has met the high standard for stating a substantive due process claim against the Defendants.

> **2.    Gearhart does not plausibly allege a substantive due process claim based on harm to reputation and loss of academic/ employment opportunities.**

To the extent Gearhart intends to state a claim for injury to her liberty interests in her reputation or continued employment (ECF #7, ¶¶ 214-218),[7] which

---

[6] These include consuming alcoholic beverages with female students (¶ 40), aggressive flirting (¶ 40), "middle school antics" (¶ 33), pursuing personal information about female students (¶ 36), unprofessional displays of anger (¶¶ 37-38); requesting meetings with female students at public, off-campus locations (¶ 39); and making inappropriate comments about female students' appearance (¶ 40).

[7] *See Workman v. Jordan*, 32 F.3d 475 (10th Cir.1994) the Tenth Circuit articulated a four-part test (the "*Workman* test") that a plaintiff must satisfy to demonstrate a deprivation of such liberty:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the

Defendants do not concede she has sufficiently identified, she engages in more speculation to support her claim that Abrams and Mesyan conspired with Tomforde to destroy her reputation in the Math Department and deprive her of academic and employment opportunities. First, Gearhart's Amended Complaint lacks any timeframe for these alleged events – which leaves Defendants and this Court to guess as to how they relate back, if at all, to her December 2021 reporting to OIE. ECF #7, ¶¶ 201- 217).

Second, Gearhart perceives Abrams' and Mesyan's ongoing support for their colleague, Tomforde, including continuing work on projects with him, as conduct directed against her and her future academic success. ECF #7, ¶¶ 223-225. Not only do these allegations rely on speculation, but more importantly, Gearhart did not enjoy a liberty interest in having faculty support for her underlying Title IX claim nor to have their acceptance of her version of events. Her speculation about their apparent solidarity with Tomforde or her opinion that they lied or defamed her in their testimony before the Title IX hearing officer (ECF #7, ¶ 238)[8], will not support any claim for relief, let alone one for violation of a federal right. Allegations that

---

employee or must foreclose other employment opportunities. And fourth, the statements must be published.

*Id.* at 481 (citations omitted); *see also Melton v. City of Oklahoma City*, 928 F.2d 920, 926–27 (10th Cir.1991) (en banc) (holding that elements are not disjunctive but must all be satisfied).

[8] Gearhart does not identify any specific testimony given by either Defendant that she alleges was false or defamatory. The accusation must be ignored by this Court.

these individuals shared gossip about her, testified or spoke of her in critical or unflattering terms, are also insufficient to state substantive due process claims. Not all hurtful or unprofessional behaviors rise to the level of conduct that would "shock the conscience" of federal judges – and here, they certainly do not reach that bar. *See, e.g., Abeyta*, 77 F.3d at 1254-58 (finding that teacher who repeatedly called a twelve year old female student a prostitute and permitted her classmates to taunt her did not act with the high level of brutal abuse of official power that shocks the conscience of the court).

Notably, Gearhart does not identify specific academic opportunities she was actually denied post-Title IX complaint or name any other faculty who refused to work with her because of the influence of Abrams and Mesyan, acting in concert with Tomforde. ECF #7, ¶¶ 211-217. Rather she only describes her "blacklist[ing]" in the Department in conclusory fashion. *Id.,* ¶¶ 214-216 ("The false statements made publicly about Plaintiff by Defendants served to foreclose other professional employment opportunities in the field for Plaintiff."). Moreover, Gearhart does not allege (nor can she allege) that Abrams or Mesyan caused her to be discharged from the PhD program altogether, adversely impacted her academic standing, influenced specific faculty to reject her as a candidate for other projects and teaching assignments, restricted her access to coursework or mentoring, or otherwise acted to deny her eligibility for any professional opportunities inside or outside of the Math

Department, such as symposiums, conferences or awards. *Id.,* ¶¶ 213-217.[9] There are simply insufficient facts alleged here to place these Defendants on notice as to exactly how she was injured by what amounts to state a claim for negligent conduct—much less a *constitutional* injury, which requires a much higher level of pleading and proof.

At most, Gearhart's allegations might state common law torts for negligent hiring, negligent supervision and training, negligence in reporting, tortious interference with business or employment prospects, or defamation. The Civil Rights Act was not created to duplicate these theories of recovery or to elevate them to claims for violations of any federal right.

Gearhart is unable to show that either Abrams or Mesyan acted with the "requisite degree of culpability in failing to protect the plaintiff" from harm by Defendant Tomforde, *see Seamons,* 84 F.3d at 1236, or that their response in the wake of Gearhart's complaint against Tomforde or actions taken with respect to her academic status or employment thereafter, were "shocking to the conscience, brutal or otherwise offensive to human dignity." *Abeyta,* 77 F.3d at 1256. Count II must be dismissed.

---

[9] A more likely inference, in terms of the Department's motivation for removing her from her present teaching assignments or coursework (which she does not specify), is a neutral one, that is, these decisions were made in service of the OIE's directive for "no contact" between Gearhart and Tomforde, as opposed to punitive actions against her. ECF #7 ¶¶ 222. *See Robbins,* 519 F.3d at 1247.

### C.    Gearhart is unable to state a claim for violation of her equal protection rights.[10]

"The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'" *Soskin v. Reinertson,* 353 F.3d 1242, 1247 (10th Cir.2004) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). "[S]exual harassment by a state actor can constitute a violation of the equal protection clause." *Murrell v. Sch. Dist. No. 1,* Denver, 186 F.3d 1238, 1249 (10th Cir. 1999).

To state a claim under the Equal Protection Clause, a plaintiff must plead facts showing that she was treated differently from others who are similarly situated to her, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose. *See Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). Ultimately, liability must be predicated in conduct traceable to a defendant's individual actions. *Iqbal*, 556 U.S. at 676. A conclusory assertion of an equal protection violation, unsupported by factual allegations, must be rejected as a matter of law. *Abbott v. McCotter*, 13 F.3d 1439, 1441 (10th Cir. 1994) (upholding district court's dismissal of plaintiff's equal protection claim supported only by conclusory allegations and no factual allegations). The specific facts alleged by the plaintiff must be "at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*,

---

[10] Defendants join and incorporate by reference, the arguments stated by the University Defendants at *II.c.* of their Motion to Dismiss. (ECF #7, pp. 7-10).

158 F.3d 1022, 1026 (9th Cir.1998). The allegations must also plausibly establish that the individual with whom [s]he compares h[er]self is similar to h[er] "in every relevant respect." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).

With respect to claims stated pursuant to Sections 1981 and 1985, claims must be grounded in *intentionally* discriminatory acts. *See Reynolds v. Sch. Dist. No. 1,* 69 F.3d 1523, 1532 (10th Cir. 1995); *see also Wood v. City of Topeka,* 90 F.Supp.2d. 1173, 1188 (10th Cir. 2000). (emphasis added).

In this case, Gearhart has not alleged any facts showing that Defendants' actions were motivated by gender animus as opposed to many other potential neutral factors. *See Robbins,* 519 F.3d at 1247 ("[I]f [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible'") (quoting *Twombly,* 550 U.S. at 570); or that the conduct was intentional. ECF #7, ¶¶ 185, 188,-190, 205-206, 211, 227-228, 230 (The conduct of Defendants was motivated by evil intent."), 280. They collectively rely heavily on speculation, innuendo and conclusory allegations devoid of facts.

Gearhart's attempt to identify comparators in support of her equal protection claim is profoundly lacking in any detail such that this Court could never determine whether the unnamed "male" students she claims replaced her with respect to unspecified academic and teaching assignments "for the remainder of the semester" are true comparators to her. ECF #7, ¶ 205. Her only other allegation with respect

to males receiving more favorable treatment than her, as a result of Abrams' and Mesyan's actions, is a vague declaration that these Defendants (lumped in a group along with unnamed "supervisory authority over them" and the "remaining Defendants") enacted and enforced a "practice, policy and/or custom which inequitably benefits and protects males particularly male educators." *Id.*, ¶ 227. Notwithstanding the fact that Gearhart has not and cannot allege that she is similarly situated to male "educators", this allegation falls far short of the requirement to identify similarly situated males that were treated more favorably than *this* Plaintiff by *these* Defendants. *See Ingraham v. Cooper,* 163 F.Supp.3d 1133, 1140 (N.D. Okla. 2016) (Court rejected race and gender based equal protection claim where Plaintiff made only a general allegation that "similarly situated non-protected" students at NSU were treated differently but failed to specifically allege that any difference in treatment was the result of intentional racial, gender, or age discrimination); *see also, Pahls v. Thomas*, 718 F.3d 1210, 1233 (10th Cir. 2013) (Defendants' potential liability "turn[s] on an individual assessment of each defendant's conduct and culpability.").

Gearhart's equal protection claim is lacking in any of the necessary factual allegations necessary to satisfy *each and every* pleading requirement of an equal protection claim, and therefore, must be dismissed.

### III.    Gearhart has not set forth facts to support a claim for conspiracy to deprive her of her civil rights pursuant to Section 1985.

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03).[11] Additionally, § 1985(3) applies "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin*, 403 U.S. at 101-02).

With respect to allegations of a conspiracy, the Tenth Circuit requires a plaintiff to allege a sufficient factual basis to support the existence of an agreement and concerted action between the co-conspirators. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230–31 (10th Cir. 1990). "Section 1985(3) conspiracy claims cannot stand on 'vague and conclusory allegations'; but rather, 'must be pled with some degree of specificity.'" *O'Connor*, 290 F. App'x at 141.

The Tenth Circuit has emphasized that "the *Twombly* Court was particularly critical of complaints that 'mentioned no specific time, place, or person involved in the alleged conspiracies.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Said differently,

---

[11] Consistent with the theme, Gearhart does not specify under which subsection of § 1985 she brings her claim. Based on the nature of her conclusory allegations, Abrams and Mesyan presume her claim falls under subsection §1985(3).

"a complaint must explain what *each* defendant did to him or her; *when* the defendant did it; *how* the defendant's action harmed him or her; and, *what* specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007) (emphasis added).

Likewise, the Tenth Circuit has recognized that in civil rights cases, "defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249-50. It is improper for plaintiffs to use "either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" because "it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

### A.   Gearhart's complaint is impermissibly vague.

In Count IV, Gearhart names Tomforde, Abrams and Mesyan, but fails to distinguish between the three. ECF #7, ¶¶ 310-16. The supporting allegations in the "Factual Allegations" section repeatedly use the collective term "Defendants," treat "Tomforde, Abrams and Mesyan" as a single unit, or identify "Defendants Abrams

and Mesyan and those with supervisory authority over them, including the remaining Defendants"—which is just another way of saying "all defendants." *See, e.g.*, ECF #7, ¶¶ 213-17, 226-38. Gearhart's Count IV fails to because it does not "explain what *each* defendant did to [her]; *when* the defendant did it; *how* the defendant's action harmed [her]; and, *what* specific legal right the plaintiff believes the defendant violated." *Nasious*, 492 F.3d at 1163.

### B. Gearhart's allegations fail to state a claim of conspiracy.

Even when Gearhart's minimally cognizable allegations are liberally construed, her complaint still fails to state a claim under § 1985(3). The most that can be gleaned from Gearhart's complaint is that Tomforde allegedly "discussed the situation concerning he and Plaintiff with Defendants Mesyan and Abrams…[and] the trio actively agreed not to make any report to OIE." ECF #7, ¶¶ 187, 189. Yet this still does not sufficiently allege a conspiracy to deprive Gearhart of equal protection or equal privileges and immunities. This is because Gearhart does not allege that Abrams or Mesyan were actually aware of her allegations. At the very most, she claims that Tomforde "discussed the situation," but this falls short of identifying sufficient facts that would give rise to a constitutional obligation to report Tomforde to OIE. *See* ECF #7, ¶ 186. In other words, Abrams and Mesyan had no information to report to OIE. So, assuming the allegations to be true, any agreement not to report cannot constitute a conspiracy to deprive Gearhart of her rights based on class-based, invidiously discriminatory animus.

Similarly, Gearhart's allegation about Abrams and Mesyan's failure to report to OIE cannot meet the injury or deprivation element. Gearhart's complaint alleges that she had already "made a preliminary report" to OIE, as had another Department staff member, Sean Dean. ECF #7, ¶177-78. And Gearhart admits that she failed to respond to OIE's inquiry or pursue the process. *Id.*, ¶180. Given these multiple reports and Gearhart's failure to participate in the process, she cannot plausibly allege that Abrams or Mesyan's failure to report to OIE caused her any kind of injury or deprivation.

Finally, Gearhart baldly claims that Abrams and Mesyan conspired to remove her from her academic and teaching responsibilities, spread false claims, and publicly stated that they would not work with her. ECF #7, ¶¶ 205, 208, 211-213. Even assuming these events took place, they cannot sustain a claim under § 1985 because Gearhart does allege a specific agreement between Abrams and Mesyan.

The Tenth Circuit has repeatedly emphasized that a "civil conspiracy requires a meeting of the minds or agreement among the defendants and concerted action." *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 770 (10th Cir. 2001). "The bare assertion that certain officials 'conspired' is exactly the kind of conclusory statement [courts should not] consider when assessing a motion to dismiss." *Gowadia v. Stearns*, 596 F. App'x 667, 671 (10th Cir. 2014). And concerted action doesn't follow necessarily from parallel action because "parallel action, oftentimes,

is an expected result of innocent behavior and is thus just as consistent with independent actions as it is with conspiracy." *Id.* At the very most, Gearhart has alleged parallel action, which is insufficient to support a §1985 conspiracy claim, and this Court should dismiss Count IV.

## IV.   Abrams and Mesyan are entitled to qualified immunity.

Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A constitutional right is "clearly established" if the "contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Otherwise, plaintiffs would be able to convert the rule of qualified immunity "into a rule of virtual unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Defendants, as government actors, need only raise the defense of qualified immunity and then the burden shifts to Plaintiffs to demonstrate that (1) the defendants' conduct does, in fact, violate a constitutional right; and (2) that this

right is clearly established. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *see also White*, 137 S. Ct. at 552; *see also Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). A court may review either prong first and need only find one prong unsubstantiated to hold that qualified immunity bars a plaintiff's claims. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Pearson v. Callahan,* 555 U.S. 223 (2009). Because Gearhart here cannot demonstrate either prong, Abrams and Mesyan are immune from their individual capacity damages claims.

### A.   Gearhart fails to allege plausible claims that Abrams and Mesyan violated her federal constitutional rights.

For the same reasons and based on the same authorities set forth above in Section II. and III. Gearhart fails to state any plausible claims for violation of her rights under the Fourteenth Amendment Due Process and Equal Protection clauses, and therefore, is unable to satisfy the first prong of the qualified immunity test.

### B.   Gearhart cannot point to any clearly established law in support of her constitutional claims.

The existence of a general constitutional right is not enough to demonstrate a law is clearly established. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez v. Cobos*, 841 F.3d 895, 890 (10th Cir. 2016) (internal

quotation marks and citation omitted); *see also Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation omitted).

Here, neither the U.S. Supreme Court, the Tenth Circuit, nor any other circuit court has held that (1) an employee at a public institution of higher education violates a federally secured right by recruiting or hiring an educator with a known history of gender-related misconduct at another educational institution; (2) by supporting a male faculty member's versions of events and ongoing participation within the Department, over that of the complaining female student, during a Title IX investigation; (3) by failing to report alleged sexual misconduct to designated Title IX investigators; (4) by reassigning academic and teaching assignments in the wake of a Title IX investigation impacting the Department as a whole; or (5) by declining to serve as a student's advisor or mentor. Absent such binding precedent, Defendants Abrams and Mesyan are entitled to qualified immunity from Gearhart's federal claims for damages.

WHEREFORE, Defendants Abrams and Mesyan respectfully request this Court dismiss Claims II and IV, as stated against them in their individual capacities, *with prejudice,* and for all further relief deemed appropriate by this Court.

Respectfully submitted this 15th day of October, 2024.

PHILIP J. WEISER
Attorney General


*s/ Amy Colony*
AMY COLONY, 36124*
Senior Assistant Attorney General
Tort
Civil Litigation
Attorney for Defendant Gene Abrams


*s/ Micheal McMaster*
MICHAEL MCMASTER, *
Senior Assistant Attorney General
Higher Education
State Services
Attorney for Defendant Zachary Mesyan

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10 Floor
Denver, Colorado  80203
Telephone:  720-508-6615;
FAX:  720-508-6032
E-Mail:  amy.colony@coag.gov;
    michael.mcmaster@coag.gov;
*Counsel of Record

CERTIFICATE OF SERVICE

I hereby certify that on 15th day of October, 2024, a true and correct copy of the foregoing **DEFENDANTS GENE ABRAMS' AND ZACHARY MESYAN'S JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF #7)** was duly filed and served upon the following parties through the CM/ECF system which will send notification of such filing to the following:

Paul M. Linnenburger
Email: paul@attorneyslane.com
*Attorney for Plaintiff*

Courtney B. Kramer
James K. Kadolph
Email: CKramer@sgrllc.com
         JKadolph@sgrllc.com
*Attorneys for Defendant Mark Tomforde*

Megan H. Clark
Email: Megan.Clark@cu.edu
Hermine Kallman
Email: Hermine.kallman@cu.edu
*Attorneys for Defendants University of Colorado, Colorado Springs,*
*the Regents of the University of Colorado,*
*and Chancellor Jennifer Sobanet, in her official capacity*


*s/      La'Tasha Canty*
La'Tasha Canty, Paralegal