IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-00976-SKC-MDB

KRISTEN GEARHART,

  Plaintiff,

V.

UNIVERSITY OF COLORADO COLORADO SPRINGS, *et al.*,

  Defendants.

---

## ORDER RE: MOTIONS TO DISMISS (DKTS. 74, 77, 79)

---

When Plaintiff Kristen Gearhart was an undergraduate student studying mathematics and computer science, Defendant University of Colorado Colorado Spring (UCCS) hired Defendant Mark Tomforde as an associate professor in mathematics. Dkt. 64, ¶¶165.[1] Defendants Gene Abrams and Zachary Mesyan, tenured professors in the math department, allegedly recruited Tomforde despite knowing that he had a history of abusive behavior toward female students at his previous university. *Id*. at ¶¶26-67, 117-127, 138-159.

---

[1] These allegations are from the Second Amended Complaint. Dkt. 64. The Court accepts the allegations as true and construes them in the light most favorable to Plaintiff.

Following Tomforde's recruitment and hiring, another UCCS professor who knew Plaintiff's graduate ambitions suggested that she work with Tomforde as a graduate student. *Id*. at ¶167. Plaintiff began communicating with Tomforde in the summer of 2020, and by the time he began teaching in the fall, Plaintiff alleges Tomforde had begun "grooming" her and isolating her from other members of the math department. *Id*. at ¶¶168, 171. According to the allegations, from the fall of 2020 until Plaintiff left UCCS in December 2022, Tomforde exerted emotional control over her, physically and emotionally abused her, and coerced her into a sexual relationship with him. *Id*. at ¶¶171-182, 185-186, 189-192, 199-211, 215-216. Plaintiff alleges that other students and faculty at UCCS noticed Tomforde's excessive interest in her. *Id*. at ¶235.

In December 2021, Plaintiff told Sean Dean, another UCCS faculty member, about Tomforde's conduct. *Id*. at ¶238. Both Dean and Plaintiff made separate reports to UCCS's Office of Institutional Equity (OIE). *Id*. at ¶¶245-246. But OIE allegedly delayed in following up on Plaintiff's report, and it closed Plaintiff's file without further action. *Id*. at ¶¶247-249. Thereafter, Tomforde, Abrams, and Mesyan allegedly began to retaliate against Plaintiff for making the report. Their retaliation included refusing to change her academic advisor and making disparaging remarks about her to other faculty in the math department and the eventual Title IX proceedings. *Id*. at ¶¶254-263, 292, 296, 301-308, 323-335, 342-343. As a result of the foregoing conduct, Plaintiff left UCCS in December 2022.

Plaintiff filed this lawsuit in April 2024 asserting claims pursuant to Title IX and 42 U.S.C. § 1983 against UCCS, the Board of Regents of the University of Colorado, and Jennifer Sobanet, the UCCS Chancellor (collectively "the University"). She also asserts claims against Tomforde, Abrams, and Mesyan in their individual capacities. Plaintiff amended her original pleading once as a matter of course. Dkt. 7. After the University, Abrams, and Mesyan submitted their original motions to dismiss, Plaintiff sought to amend her complaint a second time.[2] Dkt. 61. The Court granted Plaintiff's motion, and the Second Amended Complaint (SAC) became the operative pleading. Dkts. 62, 64.

The University, Abrams, and Mesyan have again filed motions to dismiss the claims against them in their entirety. Dkts. 74, 79. Tomforde seeks to dismiss Plaintiff's claims in part. Dkt. 77. These matters are fully briefed, and no hearing is necessary. Having considered the SAC, the Motions to Dismiss, the related filings, and the controlling law, the Court GRANTS Defendants' Motions.

## A. LEGAL PRINCIPLES

### 1.    Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in

---

[2] Tomforde filed an answer to Plaintiff's first amended pleadings. Dkt. 40.

the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

2.    **Qualified Immunity**

Qualified immunity shields individual defendants in Section 1983 actions unless their conduct was unreasonable based on clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted). The court has discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011). Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Raising the qualified immunity defense with a motion under Rule 12(b)(6) subjects the defendant to a more challenging standard than what applies at the summary judgment stage. *Id.* "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* (cleaned up). The court must consider whether the facts alleged in the complaint plausibly allege a violation of a constitutional right, and whether the right at issue was clearly established. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

## B. ANALYSIS

**1.    The University's Motion to Dismiss (Dkt. 74)**

In the SAC, Plaintiff asserts two claims against the University. One claim is for alleged violations of Title IX, and the other is pursuant to 42 U.S.C. § 1983, albeit for violations of undefined constitutional rights. The Court concludes both claims are subject to dismissal.

### a.  42 U.S.C. § 1983

The University contends Plaintiff's claims under § 1983 are subject to dismissal because they are barred by sovereign immunity, and to the extent they are not, Plaintiff has failed to state a claim for prospective relief. Dkt. 74. "The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities." *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). The Eleventh Amendment does, however, permit suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young*, 209 U.S. 123 (1908).

There is no question that the University of Colorado is an "arm of the state" of Colorado. *Harrison v. Univ. of Colo. Health Scis. Ctr.*, 337 F. App'. 750, 753 (10th Cir. 2009). And therefore, Colorado's sovereign immunity deprives this Court of jurisdiction to consider any claims against the University—including those based on Abrams and Mesyan's "official capacity" actions—seeking retrospective relief in the

form of damages. To the extent Plaintiff still asserts such claims, they are dismissed

with prejudice.[3]

Turning to Plaintiff's request for prospective relief, the Court begins by again

noting that her claim against the University, via Chancellor Sobanet, does not

identify any constitutional violations for which the University is to be held liable.

Dkt. 64, ¶¶503-504. And to the extent Plaintiff seeks to rely on her incorporation of

the 501 paragraphs that preceded this claim,[4] this is a clear violation of Federal Rule

of Civil Procedure 8, and the Court will not allow it. *See Haynes v. Allstate Fire &*

*Cas. Ins.*, No. 19-cv-02397-STV, 2020 WL 816043, at *7 (D. Colo. Feb. 18, 2020) ("[I]t

is inappropriate for a plaintiff to incorporate by reference *all* prior allegations into

each of her claims."). Neither judges nor defendants are "like pigs, hunting for

truffles" buried in the pleadings. *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546

---

[3] Many of Plaintiff's allegations suggest she asserts liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In her Response, however, she concedes that *Monell* does not apply against states. Dkt. 89, pp.3-4 n.2. *Quern v. Jordan*, 440 U.S. 332, 338 (1979) ("*Monell* [is] limited to local government units which are not considered part of the State for Eleventh Amendment purposes. . . .").

[4] The SAC contains an abundance of 507 numbered allegations total. This § 1983 claim, which is the last claim pleaded, is merely comprised of three numbered allegations, 502-04. Meaning, the claim relies exclusively on its incorporation by reference of 501 numbered allegations preceding it. This is poor and inexact pleading by any standard. *See, e.g.,* William Shakespeare, *Love's Labour's Lost*, Act 5 scene 1 ("He draweth out the thread of his verbosity finer than the staple of his argument."). Counsel would do well to understand that when faced with 504 numbered allegations, less is more, and certainly more effective when pleading claims. Further, precision, directness, and clarity of pleading the specific facts that support a claim are imperative rules of thumb when in federal court.

(10th Cir. 1995). The Court dismisses Plaintiff's claim on this basis alone. *See also* Section C.3.a., *infra.*

But even if the Court were inclined to accept Plaintiff's clarification in her Response brief (Dkt. 89, pp.5-7), the Court agrees with the University that the purported constitutional violations are not ongoing. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). Plaintiff relies on her allegations and claims regarding Tomforde's sexual harassment and abuse. Dkt. 89, pp.5-7. And she cites the allegedly hostile and dangerous environment Defendants Tomforde, Abrams, and Mesyan created, as well as their refusal to allow her to change academic advisors. *Id.* But Plaintiff left UCCS in December of 2022, and therefore, any request for relief would be retrospective in nature. And Plaintiff's reliance on the University's allegedly ongoing discriminatory hiring and tenure practices, *id.* at p.7, is misplaced because (1) these practices are not related to Plaintiff's claims in this matter, and (2) even accepting that the University's hiring and tenure practices created an environment conducive to Tomforde's alleged behavior, it is nevertheless not ongoing with respect to Plaintiff because she is no longer an enrolled student.

The only prospective relief Plaintiff seeks is reinstatement into the UCCS Ph.D. program based on a theory of constructive expulsion and a retraction of any defamatory statements based on her due process claim for damage to her reputation.

Dkt. 64, pp.90-91. But Plaintiff has not stated cognizable claims that would entitle her to either of these requests for relief, as explained below.

### i.    Constructive Expulsion

Regarding claims for "constructive expulsion," the Tenth Circuit has previously discussed the theory, although it did not explicitly name it as such. *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996). In *Seamons*, a high school student brought a claim for deprivation of his procedural due process rights when he transferred to another school after being subjected to a hostile environment and after the principal suggested he leave the school. *Id.* 84 F.3d at 1230-31. In concluding the student had not stated a claim, the Tenth Circuit observed that before the Due Process Clause can be implicated, "there must be an element of deliberateness in directing the misconduct toward the plaintiff." *Id.* at 1234 (internal quotation omitted).[5] The court found that the plaintiff had not sufficiently alleged deliberate conduct on the part of officials with the purpose of removing him from the school. *Id.*

So too in this case. Plaintiff has not included any allegations that the University engaged in deliberate conduct, the purpose of which was to make her circumstances so intolerable that she would leave school. And even considering Tomforde, Abrams, and Mesyan's conduct, the allegations—while particularly troubling if true—do not support a reasonable inference that they acted with the

---

[5] The Tenth Circuit also found that the student had not been forced to leave school but rather, had voluntarily transferred. *Seamons*, 84 F.3d at 1234.

purpose of forcing Plaintiff to leave. To be sure, as the Court also discusses below, the purpose of the conduct was apparently to keep Plaintiff under Tomforde's control and supervision. Thus, Plaintiff's allegations neither establish a claim of constructive expulsion against the University nor support her request for prospective injunctive relief.

### ii.    Liberty Interest in Reputation

To state a due process claim for damages to her reputation, Plaintiff must allege (1) the University made statements that "impugn [her] good name, reputation, honor, or integrity;" (2) "the statements must be false;" (3) "the statements must occur in the course of terminating the employee or must foreclose other employment opportunities;" and (4) "the statements must be published." *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). Because this test is written conjunctively, a plaintiff must plausibly allege each element to properly state a claim. *McDonald v. Wise*, 769 F.3d 1202, 1212 n.3 (10th Cir. 2014).

But here, there are no allegations the University published any defamatory statements impugning Plaintiff's name or reputation. At most, the allegations suggest any statements regarding Plaintiff's name, honor, or integrity were made between and among UCCS employees, which is not sufficient for publication. *Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984) ("[I]ntra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: to be made public."). Thus, this claim must also be dismissed.

**b. Title IX**

The University seeks dismissal of Plaintiff's Title IX claim because the statute of limitations has lapsed. The statute of limitations is an affirmative defense and typically requires development of facts to support dismissing a case on this basis. *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). The Court may, however, resolve the question on a Rule 12(b) motion "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Id*.

The Colorado statute of limitations for Title IX claims is two years, and therefore, because Plaintiff filed this action on April 10, 2024, any claims that accrued prior to April 10, 2022, are untimely. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014) (applying the same state statutes of limitations for § 1983 claims to Title IX); Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" must commence within two years).

Determining the time of accrual is governed by federal law. *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). The standard rule is federal causes of action accrue "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cleaned up). It is not necessary for a plaintiff to have all the evidence regarding the cause of her injury for an action to accrue. *Alexander v. Oklahoma*, 382 F.3d 1206, 1215-16 (10th Cir. 2004). "Rather, [the court focuses] on

11

whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Id.* at 1216.

Plaintiff's Title IX cause of action against the University is based on her allegations that the University knew of Tomforde's harassment, assault, and abuse but did nothing about it. Dkt. 64, ¶¶468-92. The University contends Plaintiff's Title IX claim accrued in December 2021. Dkt. 74, pp.5-6. In particular, the University cites Plaintiff's allegations that she had reached a breaking point with respect to Tomforde's abuse and harassment by December of 2021, at which time she told Sean Dean about Tomforde's conduct. Dkt. 64, ¶¶237-238. Plaintiff and Dean then separately made reports to the Office of Institutional Equity. *Id.* at ¶¶245-46. But according to Plaintiff, OIE never followed up with Dean. *Id.* at ¶247. And it only followed up with Plaintiff "sometime later" when the students were on break between semesters, which was well after Tomforde had allegedly coerced Plaintiff into recanting her statements to Dean. *Id.* at ¶¶243, 248. OIE closed Plaintiff's file without any other follow up. *Id.* at ¶249.

In her Response, Plaintiff argues December 2021 cannot be the accrual date because her claim was not complete at that time, that is, she had not yet been forced to leave the University. She contends her claim did not accrue until December 2022, when the situation got so bad that she was forced to leave school. Dkt. 89, pp.21-22. In support of her argument, Plaintiff cites *Kinoff v. Colorado Sch. of Mines Bd. of Trs.*, No. 21-cv-02657-RMR-KLM, 2023 WL 11898803, at *3 (D. Colo. Feb. 9, 2023),

*report and recommendation adopted*, 2023 WL 11898798 (D. Colo. Mar. 16, 2023), for the proposition that her claim did not accrue until she left UCCS. Dkt. 89, 22-23. Plaintiff misinterprets the court's analysis in *Kinoff*.

In *Kinoff*, the plaintiff was a student at the Colorado School of Mines and a member of the Army Reserve Officers' Training Corps (ROTC). 2023 WL 11898803, at *1. The plaintiff became romantically involved with another student in ROTC, but this student became both mentally and physically abusive. *Id*. According to the plaintiff, an employee of Mines visited her in January 2015 with instructions on how to receive counseling. *Id*. at *2. But the plaintiff continued to feel unsafe at the school, and her mental state deteriorated to the point that she withdrew from Mines in May 2016. She did not file her Title IX action until September 2021. *Id*.

In reviewing Mines' arguments for dismissal, the *Kinoff* court concluded that the statute of limitations had lapsed. *Id*. at *4-5. Contrary to Plaintiff's argument, however, the *Kinoff* court's finding regarding accrual was not dependent on the date the plaintiff left school. Rather, the court noted that *at the latest*, her claim accrued when she left school in May 2016. But the court also found the plaintiff knew or should have known she had a claim against the school while she was still enrolled. *Id*. at *4. Specifically, the court observed that the plaintiff "allege[d] numerous situations in which she lived in fear of encountering [the abusive student] on campus between late January 2015 and May 2016." *Id*. The plaintiff was further aware during the time she was enrolled at Mines that the abusive student "never faced disciplinary

consequences and graduated from Mines in 2016." *Id*. And most importantly to the *Kinoff* Court, the plaintiff "was aware that no one from Mines had reached out to her to discuss her Title IX investigation or report, or provide support in keeping her safe." *Id*. The Court finds this reasoning persuasive and equally applicable to the facts in this case.

Here, Plaintiff knew at least by the middle of January 2022,[6] that OIE had received two reports regarding the harassment and abuse she had endured. Dkt. 64, ¶¶245-246. She also knew that OIE failed to timely follow up with her report or schedule a meeting, only contacting her during the winter break. *Id*. at ¶248 And she knew OIE closed the file without any further follow up. *Id*. at ¶249. Thus, Plaintiff knew or should have known of her Title IX claim in the winter of the 2021-2022 school year. That the consequences of the University's alleged violation were not fully realized until she left school in December 2022, does not toll the statute of limitations.

---

[6] According to the UCCS Registrar's Office, the winter break for the 2021-2022 academic year began on December 18, 2021, and concluded on January 18, 2022. (registrar.uccs.edu/sites/default/files/2023-10/Academic%20Calendar%202021-2028.pdf) (last visited August 21, 2025). *See Armstrong v. JPMorgan Chase Bank Nat'l Ass'n*, 633 F. App'x 909, 911 (10th Cir. 2015) (citation omitted) ("A court may consider facts subject to judicial notice–including facts that are a matter of public record, such as documents filed in other litigation–without converting a motion to dismiss into a motion for summary judgment."); *see also New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) (taking judicial notice of two federal agency websites); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

*Hull v. Colorado Bd. of Governors of Colorado State Univ. Sys.*, 805 F. Supp. 2d 1094, 1104 (D. Colo. 2011).

Finally, the Court rejects Plaintiff's argument that the continuing violation doctrine saves her Title IX claim. The continuing violation doctrine applies "when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019) (cleaned up). As long as one separate wrongful act occurs within the filing period, a court may consider the entire course of conduct—even those acts falling outside the relevant period. *Id*. (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). The continuing violation theory, however, "is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). And "[a]n important caveat to the continuing violation doctrine . . . is that it is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Hamer*, 924 F.3d at 1099 (citing *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011)).

In her Response, Plaintiff argues she has "alleged a continuing course of abusive discriminatory conduct through the fall of 2022 and even beyond with allegations into the fall of 2024 immediately preceding filing of this operative

Complaint." Dkt. 89, p.24. But instead of developing this argument with specific examples and discussion, she only supports this conclusory assertion with a string citation of no less than 363 allegations, nearly three-quarters of the SAC.[7] *Id.* Such a woefully underdeveloped response is akin to no response at all, and the Court will not sift through the multitudes to determine whether the purported continuing conduct exists. *See A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) ("In addition, the qualified-immunity argument was underdeveloped. It contains mostly general legal statements and empty platitudes."); *Tillmon v. Douglas Cty.*, 817 F. App'x 586, 589-90 (10th Cir. 2020) (declining to reach qualified immunity where "defendants' analysis of qualified immunity in that motion [to dismiss] was cursory at best.").

Plaintiff's Title IX claim is time-barred and must be dismissed.

**2.     Defendant Tomforde's Partial Motion to Dismiss (Dkt. 77)**

Tomforde seeks dismissal of Plaintiff's claim that he violated her Fourteenth Amendment due process rights to her education and reputation. He also seeks dismissal of Plaintiff's retaliation claim pursuant to the Fourteenth Amendment.

**a.  Due Process Right to Education**

Plaintiff asserts Tomforde's conduct resulted in her constructive expulsion from UCCS, and in doing so, Tomforde violated her substantive and procedural due process rights. Tomforde contends he is entitled to qualified immunity. The Court

---

[7] *See, e.g., supra n.*4.

does not address whether Plaintiff's allegations state a claim for procedural or substantive due process violations because the Court concludes even if she has alleged facts sufficient to state a claim, the law on "constructive expulsion" is not clearly established. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (courts have discretion to consider the qualified immunity prongs in any order.).

    In her Response, Plaintiff has not identified clearly established law permitting procedural or substantive due process claims based on a "constructive expulsion" theory. She first cites several cases addressing what due process is owed to students being dismissed from advanced degree programs. Dkt. 87, pp.5-6. But her claims are based on a theory of constructive expulsion whereas the students in these cases were formally dismissed, albeit involuntarily, from their degree programs based on poor academic performance or testing. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 79 (1978) (student dismissed from medical school for poor academic performance); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) (student dismissed from nursing school pursuant to school policy after receiving a "D" in a required course); *Trotter v. Regents of Univ. of New Mexico*, 219 F.3d 1179, 1182 (10th Cir. 2000) (dismissal from medical school for poor academic performance); *Assenov v. Univ. of Utah*, 553 F. Supp. 2d 1319, 1321 (D. Utah 2008) (dismissal from doctoral program after twice failing the qualifying

exams). Thus, Plaintiff's reliance on these cases is misplaced and they do not clearly

establish the law based on her legal theory in this matter.

In addition, Plaintiff cites *Woodward v. City of Worland*, 977 F.2d 1392 (10th

Cir. 1992) to support her claim. *Woodward*, however, is distinguishable in a

significant way: It involved a claim for constructive termination of employment and

not constructive expulsion from university. While constructive termination cases may

be instructive in determining parameters for theoretical expulsion cases, the Court

concludes *Woodward* does not clearly establish the right claimed by Plaintiff in this

case.

Finally, Plaintiff relies on *Garcia v. Clovis Municipal Schools*, Case No. CIV

02-1101 WJ/KWR, 2003 WL 27385436, at *4 (D.N.M. March 3, 2003). In *Garcia*, the

district court considered the Tenth Circuit's holding in *Seamons v. Snow*, 84 F.3d

1226, 1234 (10th Cir. 1996)—which this Court has already discussed— in conjunction

with Tenth Circuit holdings governing constructive discharge in the employment

context. *Id*. The *Garcia* Court concluded that to establish "constructive expulsion," a

plaintiff "would have to allege that school officials deliberately created an intolerable

environment *in order to force a student to leave* and that the conditions within the

school were so objectively intolerable that the student had no choice but to leave."

*Garcia*, 2003 WL 27385436, at *4 (emphasis added).[8] Although the *Garcia* Court's

---

[8] And as it already concluded with respect to the University (Section B.1.a.i. *infra*),
the Court is also not persuaded that Plaintiff has alleged Tomforde's conduct was

conclusion was thorough and well-reasoned, "district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." *Ullery v. Bradley*, 949 F.3d 1282, 1300 (10th Cir. 2020). To be sure, the *Garcia* Court also concluded that a claim for "constructive expulsion" was not clearly established. *Garcia*, 2003 WL 27385436, at *4.

Tomforde is entitled to qualified immunity on this claim.

### b. Due Process Right to Reputation

Plaintiff also alleges Tomforde "disparaged, degraded, defamed, and spread damaging stories" regarding Plaintiff and in doing so, deprived her of her protected interest in her good name and reputation. *See* Dkt. 64, ¶¶390-95. As with her claim against the University, Plaintiff must allege (1) Tomforde made statements that "impugn [her] good name, reputation, honor, or integrity;" (2) "the statements must be false;" (3) "the statements must occur in the course of terminating the employee or must foreclose other employment opportunities;" and (4) "the statements must be published." *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).

In their papers, the Parties spend the bulk of their time discussing whether Plaintiff has sufficiently alleged a more tangible interest than just damage to her reputation, as required by Tenth Circuit and Supreme Court precedent. *Al-Turki v.*

---

done deliberately *with the intent to force her to leave school*. Rather, the allegations suggest Tomforde's conduct was to maintain Plaintiff as a student under his control.

19

*Tomsic*, 926 F.3d 610, 617 (10th Cir. 2019) (plaintiff must show that because of the defamation, "a right or status previously recognized by state law was distinctly altered or extinguished.") (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). The Court does not address this issue because it concludes Plaintiff's claim must be dismissed on a different basis.

The SAC alleges Tomforde made the disparaging and defamatory remarks to Abrams and Mesyan and to OIE during the Title IX investigation. There are, however, no allegations Tomforde many any of these statements outside of the University. And as the Court discussed above in addressing the University's Motion, the Tenth Circuit has long held that "intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.'" *Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984) (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1976)). Without allegations plausibly supporting a reasonable inference of publication, this claim must be dismissed.

### c. Retaliation

In the SAC, Plaintiff added a claim of retaliation pursuant to the Fourteenth Amendment. Dkt. 64, ¶¶396-401. Tomforde seeks dismissal because the Tenth Circuit does not recognize this cause of action. Dkt. 93, pp.2-3. Contrary to Plaintiff's arguments otherwise, the Tenth Circuit has long held that such "a theory of liability for retaliatory conduct does not come within § 1983." *Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006) (internal punctuation omitted), *overruled on other*

20

grounds, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also*

*Teigen v. Renfrow*, 511 F.3d 1072, 1085–86 (10th Cir. 2007) ("The mere illegality of a

retaliatory action under a separate body of law does not [constitute a]. . . violat[ion]

of the Equal Protection Clause. . . [i]f this court were to hold otherwise, every claim

of unlawful retaliation against a government employer, whether brought under state

or federal law, could be transformed into an equal protection claim simply by defining

the relevant class as consisting of those employees who challenged the government's

employment policies.") (citations omitted). Consequently, this claim is dismissed with

prejudice.[9]

**3.    Defendants Abrams and Mesyan's Joint Motion to Dismiss (Dkt. 79)**

Plaintiff purportedly asserts two claims against Abrams and Mesyan. The first

is brought pursuant to 42 U.S.C. § 1983 and the second under 42 U.S.C. § 1985.

Neither states a claim for which relief can be granted.

---

[9] In her Response, Plaintiff cites two cases for her proposition that she can bring this claim. In her first cited case, *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989), the Tenth Circuit discussed many of the defendant's actions that constituted sexual harassment in violation of the Fourteenth Amendment, which included becoming hostile and firing the plaintiff when she rejected his sexual advances. However, the Tenth Circuit was not asked specifically to consider whether the plaintiff could assert a stand-alone claim of retaliation under the Fourteenth Amendment. Furthermore, this case was issued prior to the Tenth Circuit's clear holdings in *Maldonado* and *Teigen* that bind this Court's analysis. And while Plaintiff's second case citation, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015), does specifically recognize a Fourteenth Amendment retaliation claim, the opinion was issued by the Second Circuit and is not binding precedent on this Court. Furthermore, the Court notes that the Second Circuit appears to be the only court to reach this conclusion.

### a.  42 U.S.C. § 1983

Plaintiff's "Count II" is asserted against Defendants Abrams and Mesyan in their individual capacities under § 1983. Section 1983, however, is the mechanism by which an individual can sue a government actor in his individual capacity for violating her constitutional rights. *Cuervo v. Sorenson*, 112 F.4th 1307, 1313-14 (10th Cir. 2024). The section "is not itself a source of substantive rights" and cannot be an independent claim for damages or other remedies. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The validity of a claimed constitutional violation is judged "by reference to the specific constitutional standard which governs that right." *Id*. at 394.

Plaintiff's § 1983 claim against Abrams and Mesyan lacks even a basic allegation of what constitutional amendments or rights have been violated by these defendants. Instead, "Count II" is a panoply of legal verbiage encompassing a broad swath of legal theories from negligence, Dkt. 64, ¶411 ("duty of due diligence"), and *Monell* liability, *id*. at ¶424 ("permitted a practice, policy or custom condoning or ratifying"), to defamation, *id*. at ¶456, and deprivation of due process, *id*. at 458.[10] And in a single paragraph—without any cross reference to supporting facts—Plaintiff contends Defendants Abrams and Mesyan "acting with deliberate indifference, violated Plaintiff's civil rights, including the right to equal protection under the law, to be free from unlawful discriminatory practices, to be free from violations of her bodily integrity, to be free from retaliation for engaging in constitutionally protected

---

[10] *See, e.g., supra* n.4.

activity, to due process and her good name and reputation, and to be free from conduct of state actors that shocks the conscience." *Id.* at ¶429. Lumping these legal conclusions into a single paragraph in the middle of her pleadings simply does not provide Defendants with sufficient notice of the claims against them and does nothing to state a plausible claim.[11]

In her Response, Plaintiff contends Defendants were on notice of the specific constitutional violations and facts supporting them because "Count II" incorporates by reference the preceding 403 paragraphs, which apparently includes the subheadings in her claim against Tomforde. Dkt. 96 at pp.2-3. She then attempts to clarify which constitutional violations she asserts, the elements of those violations, and the supporting allegations. *Id.* at pp.3-21. Her efforts are unavailing. The time for clarity was in the complaint not *post hoc* efforts at clarity offered in a responsive pleading.

To be sure, the SAC is the very definition of "shotgun pleading," which has been widely criticized in this district. *See Haynes v. Allstate Fire & Cas. Ins.*, No. 19-cv-02397-STV, 2020 WL 816043, at *7 (D. Colo. Feb. 18, 2020) ("[I]t is inappropriate for a plaintiff to incorporate by reference *all* prior allegations into each of her claims.") (emphasis in original); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 WL 212640, at *7 (D. Colo. Jan. 18, 2013) ("This Court has

---

[11] *Id.*

strongly criticized such use of 'shotgun pleading,' by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors."); *see also Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042-CMA-KLM, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011) (finding "shotgun pleading" to be a "defect" contributing to an award of sanctions). Each of Plaintiff's claims incorporates by reference the allegations of its predecessors, leading to a situation where many of the counts contain irrelevant factual allegations. This style of pleading "foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1243 (D. Colo. 2014) (quoting *Jacobs*, 2011 WL 4537007, at *6).

It is not Defendants' responsibility to take their best guess at what claims are asserted against them and hunt through the literal hundreds of allegations to determine whether there is factual support for these claims. Nor will this Court engage in the task.[12] It is Plaintiffs' burden of clarity and her counsel may not shift it to her opponents or this Court.

When Plaintiff sought to file her SAC, she represented that her proposed pleading had cured the defects Defendants cited in their original motions to dismiss.

---

[12] The Court also observes Plaintiff's "Count II" is entirely pleaded in the collective without differentiating between Abrams' and Mesyan's respective acts or omissions. Group pleading also violates Rule 8. *See Carrado v. Daimler AG*, No. 17-cv-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018).

The Court granted her motion over Defendants objections based on this representation. But instead of honing her claims to survive a 12(b)(6) challenge, she instead grew her pleading adding nearly 200 additional allegations and ballooning it from 47 to 91 pages. Plaintiff's claim against Abrams and Mesyan is neither short nor plain and does not state a claim upon which relief could be granted. Count II is dismissed with prejudice.[13]

### b. Section 1985

Plaintiff alleges Abrams, Mesyan, and Tomforde conspired to violate her equal protection rights, and therefore, she asserts a claim for conspiracy under 42 U.S.C. §1985(3). The statute prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson,*

---

[13] Plaintiff is represented by a licensed attorney, and this is her third attempt to plead her claims. In granting Plaintiff's motion to file the SAC, the Court warned Plaintiff that if Defendants again filed dismissal motions, she would not be given leave to amend her pleadings to address deficiencies absent exceedingly good cause. Dkt. 62. But Plaintiff's amendment not only did not clarify her claims and address the Defendants' Rule 12(b)(6) arguments, but it also made them even more opaque than before. Consequently, the Court concludes further attempts to state a claim against Abrams and Mesyan would be futile.

6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)).

Section 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 101–102. Outside the context of racial discrimination, the Supreme Court has not defined what "otherwise class-based" discrimination may be protected. And the Tenth Circuit declined to decide whether gender is one of the protected classes, *Yaklich v. Grand Cnty.*, 278 F. App'x 797, 802 (10th Cir. 2008), leaving it an open question whether gender bias is covered under this statute. Consequently, because it is not clearly established that Plaintiff's allegations would be covered by §1985(3), these Defendants are entitled to qualified immunity on this claim.[14] *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) (Defendants in section 1985 actions are entitled to claim qualified immunity).

Even if gender is a protected class, Plaintiff's claim would nevertheless fail. The Supreme Court has made explicit that §1985(3) applies only to such conspiracies "aimed at interfering with rights ... protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 (1993). But the Fourteenth Amendment does "not erect a shield against merely private

---

[14] Plaintiff did not address Defendants' qualified immunity arguments with respect to her 42 U.S.C. §1985(3) claim.

conduct however discriminating or wrongful." *Tilton v. Richardson*, 6 F.3d 683, 687 (10th Cir. 1993). And to the extent Plaintiff also asserts that the Defendants conspired to violate her First Amendment rights, the foregoing is similarly applicable and such a claim must be dismissed. *Id.* (The guarantees of the First Amendment run only against the federal government, and state governments by way of the Fourteenth Amendment.).[15] Thus, Plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) shall be dismissed with prejudice in its entirety against Abrams, Mesyan, and Tomforde.

\* \* \*

For the reasons shared above, the Court GRANTS Defendants' Motions to Dismiss. Plaintiff's claims against the University, Abrams, and Mesyan are dismissed with prejudice. In addition, Plaintiff's Fourteenth Amendment claims against Tomforde for retaliation and for violations of her due process rights to her education and reputation are dismissed with prejudice.

IT IS FURTHER ORDERED that within 14 days of this Order, the remaining Parties shall contact Magistrate Judge Maritza Dominguez Braswell's chambers to reset the Scheduling Order deadlines and commence discovery.

---

[15] In her Response, Plaintiff argues her allegations support a §1983 claim for civil conspiracy to violate her civil rights. But they do not because she has not asserted this claim and cannot add it now by way of her opposition brief. *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010).

DATED: August 25, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge